**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAMON SOTO, individually and on behalf of a class of similarly situated individuals, | ) ) ) |
| Plaintiff, | ) Case No. 24 CV 8826 ) ) Hon. John J. Tharp ) |
| v. | ) ) |
| PEOPLES AUTO PARKING COMPANY, an Illinois Corporation, and OMNIPARK, INC., a Washington Corporation, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Ramon Soto ("Plaintiff"), by and through his attorneys, brings this First Amended Class Action Complaint against Defendants OmniPark, Inc. and Peoples Auto Parking Company (hereinafter "Defendants"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and good faith belief as to all other matters based on the investigation conducted by Plaintiff's attorneys.

**INTRODUCTION**

1. Plaintiff brings this privacy class action lawsuit against Defendants for knowingly obtaining statutorily protected Personal Information—defined to include names, phone numbers, and addresses—from the departments of motor vehicles (collectively "DMV") throughout the country in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721-2725 ("DPPA").

2. Defendant OmniPark is a provider of parking enforcement services and technology to parking lot operators throughout the country, such as Defendant Peoples Auto Parking. This technology includes License Plate Recognition technology (LPR) that uses camera systems to automatically collect license plate information from vehicles entering and/or exiting a parking lot.

1

3. OmniPark uses the information obtained from its LPR systems to obtain Personal Information as defined in the DPPA from motor vehicle records, which it then provides to its customers such as Defendant Peoples Auto Parking to enable them to send mailed citations to collect parking fees that are allegedly owed to them.

4. The DPPA prohibits entities such as Defendants from knowingly obtaining, using, and/or disclosing Personal Information from motor vehicle records. To comply with the DPPA, an entity that wishes to access the information of motor vehicle records can only do so if one of the enumerated fourteen permissible purposes applies, one of which is written consent. Defendants never obtained written consent from Plaintiff or the Class, nor do any of the permissible purposes apply.

5. As such, Defendants knowingly obtained the statutorily protected Personal Information including, *inter alia*, the names, telephone numbers, and addresses of Plaintiff and the other members of the Class from non-public motor vehicle records without their written consent, and without an enumerated permissible reason, in violation of the DPPA.

6. Additionally, the Personal Information obtained by Defendants is then disclosed to and viewed by the employees, agents and representatives of Defendants, as well as third parties, which use that Personal Information to make telephone calls and mail violation fines.

7. Plaintiff seeks, on behalf of himself and the members of the proposed Class, statutory damages under the DPPA, actual or liquidated, in an amount no less than $2,500, reasonable attorney's fees and other litigation costs reasonably incurred, and such other equitable relief as the court determines appropriate, including injunctive relief in the form of a prohibition on Defendants obtaining, disclosing, and using Personal Information attained from motor vehicle records , including those from the DMV, to send parking citations through the mail.

**PARTIES**

8.	Plaintiff Ramon Soto is an Illinois resident.

9.	Defendant Peoples Auto Parking Company is an Illinois Corporation with its principal place of business and corporate offices located in Chicago, Illinois.

10.	Defendant OmniPark, Inc. is a Washington Corporation with its principal place of business and corporate headquarters in Spokane, Washington.

**JURISDICTION & VENUE**

11.	This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Driver's Privacy Protection Act, 18 U.S.C. § 2721-2725 ("DPPA").

12.	Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) because a substantial part of the events and/or omissions giving rise to the claim occurred in this District, as Plaintiff had his motor vehicle records unlawfully obtained and disclosed by Defendants in this District.

**FACTUAL ALLEGATIONS**

**A.	The DPPA.**

13.	The DPPA was enacted to protect the privacy and safety of licensed drivers and limit misuse of the information contained in DMV motor vehicle records.

14.	"Personal information" protected by the DPPA is defined as "information that identifies an individual," which "include[s] an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . " that is obtained "in connection with a motor vehicle record." 18 U.S.C § 2725(3); 18 U.S.C § 2721(a)(1).

15.	"Motor vehicle record" is defined as including "any record that pertains to a motor

vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C § 2725(1).

16. The DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b)[.]" 18 U.S.C § 2722(a).

17. Further 18 U.S.C § 2724(a) states, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."

18. The DPPA provides for fourteen exceptions where limited disclosure of Personal Information is permitted:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
> (2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.
> (3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—
>   (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and
>   (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

4

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.
(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.
(7) For use in providing notice to the owners of towed or impounded vehicles.
(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.
(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.
(10) For use in connection with the operation of private toll transportation facilities.
(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.
(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.
(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.
(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

19. Compliance with the DPPA is straightforward and simply requires written consent to lawfully collect Personal Information from motor vehicle records. 18 U.S.C § 2722(a)(13).

20. The DPPA creates a private right of action for "the individual" whose personal information was knowingly obtained, disclosed, or used "for a purpose not permitted" under § 2721(b). 18 U.S.C. § 2724(a).

**B.    Defendants' Unlawful Conduct.**

21. Defendant Peoples Auto Parking Company is an operator of several parking lots throughout the downtown Chicago area.

22. Defendant OmniPark is the provider of parking lot management services and

5

technology to parking lot operators such as Defendant Peoples Auto Parking.

23. Amongst the technology and services provided by OmniPark is automated parking enforcement that allows parking lot operators to automate the process of determining when a customer purportedly fails to pay for their parking and preparing and sending an invoice for the unpaid amount.

24. Critically, as part of its automated parking enforcement system, OmniPark implements License Plate Recognition technology ("LPR")[1]. An LPR "automatically capture[s] all license plate numbers that come into view, along with the location, date, and time. The data, which includes photographs of the vehicle and sometimes its driver and passengers, is then uploaded to a central server."[2]

25. While the use of LPR, or systems like it, is not inherently in violation of the law, the use of this information to obtain motor vehicle records associated with such license plate numbers is.

26. Indeed, OmniPark uses its LPR technology to obtain information about the vehicles leaving its customers' parking lots including the addresses and telephone numbers associated with the vehicle and provides such information to its customers so that they can then send invoices for supposedly unpaid parking.

27. Because OmniPark's LPR system is not plainly visible or is otherwise disclosed to parking lot users like Plaintiff and the other Class members, they are unaware that Defendants used their license plate data to obtain, disclose, and use their motor vehicle records.

28. Instead, even though Plaintiff and the other Class members never provided any

---

[1] "OmniPark: Fully Integrated Parking Solution" www.flashparking.com/wp-content/uploads/2021/07/omnipark_enforcement_lpr_digital.pdf..
[2] "Data Driven: What is an ALPR?", Electronic Frontier Foundation https://www.eff.org/pages/what-alpr.

personal information or address to OmniPark or the parking lot operators utilizing its services, they receive a mailed citation referring them to either mail payment or to visit a payment website operated by OmniPark to pay for the oftentimes baseless citation.

29. Critically, Defendants do not get express written consent to obtain and use such information as required under the DPPA.

      C.      **Plaintiff's Factual Allegations.**

30. In or about October 2023, Plaintiff parked in one of Defendant Peoples Auto Parking's parking lots at 9 E. Balbo Ave in Chicago.

31. Plaintiff paid for his parking using a kiosk located in the parking lot.

32. Plaintiff did not at any point provide his phone number or mailing address to Defendants.

33. However, within approximately 2 weeks of using the facility, Plaintiff received a letter mailed to his address that included his name, address, license plate number, the make of his motor vehicle, and included a picture of the rear of his motor vehicle taken at the entrance of the parking lot that clearly displayed his license plate and license plate number.

34. The letter featured a link to provide payment online at "pap.paymynotice.com," which is a payment portal operated by OmniPark.

35. Additionally, Plaintiff began to receive telephone calls where he was informed that, if he did not pay the violation fine, his debt would be sent to collections.

36. For fear of the violation fine being sent to collections, Plaintiff Soto paid the inflated violation fine despite having already paid for his parking on the day he parked.

37. Plaintiff never provided Defendants with the personal information needed to identify him by name, phone number, and address and Defendants were able to reach out to

7

Plaintiff only by obtaining his Personal Information from motor vehicle records after the license plate number on his vehicle was taken using OmniPark's LPR system.

38. Defendants did not obtain Plaintiff's express written consent for Defendants to obtain and use his motor vehicle records such that Defendants violated Plaintiff's privacy rights under the DPPA.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on his own behalf and on behalf of a nationwide class (the "Class") and a subclass, defined as follows:

> The Class: All persons residing in the United States who had their personal motor vehicle records obtained, disclosed, or otherwise used by OmniPark, Inc. without their written express consent.
>
> The Subclass: All persons residing in the United States who had their personal motor vehicle records obtained, disclosed, or otherwise used by Peoples Auto Parking Company without their written express consent.

40. Expressly excluded from the Class are any members of the judiciary assigned to preside over this matter; Plaintiff's counsel and Defendants' counsel; any officer, director, or employee of Defendants and their affiliates; and any immediate family members of such officers, directors, or employees.

41. On information and belief, there are thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of Class and Subclass members is unknown to Plaintiff, the members can easily be ascertained through Defendants' records.

42. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex class actions. Plaintiff and his counsel are committed to vigorously

8

prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class and Subclass.

43. Plaintiff's claims are typical of the claims of the other members of the Class and Subclass, in that the factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class and Subclass are the same. Plaintiff and the other members of the Class and Subclass have all suffered similar harms and damages as a result of Defendants' violation of the DPPA.

44. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to:

  a. Whether Defendants obtained, disclosed, and/or used Plaintiff's and the Class' personal information through a motor vehicle record;

  b. Whether Defendants obtained express written consent to obtain and use the motor vehicle records of Plaintiff and the other members of the Class;

  c. Whether Plaintiff and the other members of the Class are entitled to statutory damages, and if so, which;

  d. Whether Defendants should be enjoined from obtaining, disclosing and using the personal information of the Class members obtained through motor vehicle records; and

  e. Whether punitive damages are appropriate;

45. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclass is impracticable. This proposed class action

presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision making.

46. Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy.

### COUNT I
### Violation of the Drivers Protection Privacy Act
### 18 U.S.C. § 2721, *et seq.*
### (On behalf of Plaintiff and the Class and Subclass)

47. Plaintiff realleges and incorporates by reference each of the foregoing allegations as though stated herein.

48. The Driver's Privacy Protection Act, 18 U.S.C. § 2721(a), *et seq.*, prohibits a person or organization from knowingly obtaining, disclosing, or using Personal Information, or highly restricted Personal Information, contained in motor vehicle records for any purpose not specifically permitted under 18 U.S.C. § 2721(b).

49. Defendants, Plaintiff, and the members of the Class and Subclass are "persons" within the meaning of 18 U.S.C.§2725(2).

50. The names, telephone numbers, and addresses and other personal information that Defendants obtained from motor vehicle records pertaining to Plaintiff and the other members of the Class and Subclass was "Personal Information" as defined under 18 U.S.C. §2725(3).

51. The contents of Plaintiff's and the members of the Class and Subclass' records obtained by Defendants constitute a "motor vehicle record," because they contain records that "pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," within the meaning of 18 U.S.C.

§2725(1).

52. Defendants knowingly disclosed and used the Personal Information they obtained from Plaintiff's and the Class and Subclass' motor vehicle records in order to mail violation fines to Plaintiff and the other Class and Subclass members' home addresses in an attempt to collect inflated penalties and to make telephone calls informing them that failure to pay would result in the violation fines being sent to collections.

53. As such, Defendants violated 18 U.S.C. §2721, *et seq.*, by knowingly obtaining, disclosing and/or using Plaintiff and the other Class and Subclass members' motor vehicle records without their knowledge, consent or authorization for purposes not specifically permitted under the act.

54. Defendants are not an authorized recipient under 18 U.S.C. § 2721(c) and their use of Plaintiff's and the other Class and Subclass members' motor vehicle records does not otherwise fall under any of the exceptions in 18 U.S.C. § 2721(b).

55. Defendants did not receive express written consent from Plaintiff or the other members of the Class or Subclass to obtain, disclose, use, redisclose, or resell their Personal Information for any purpose.

56. As a direct and proximate result of the actions of Defendants, Plaintiff and the other members of the Class and Subclass have sustained injury, including but not necessarily limited to, intrusion upon their seclusion, invasions of their privacy, time wasted reviewing Defendants' collection mailings and telephone calls, and payment of undeserved fines and fees levied.

57. As provided by the DPPA, Plaintiff and the other members of the Class and Subclass seek: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the DPPA's

requirements; (iii) statutory damages, actual or liquidated, of not less than $2,500 for each violation of the DPPA pursuant to 18 U.S.C. § 2724(a) and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all those similarly situated, prays that the Court enter an order:

A. Certifying the Class and Subclass proposed above, appointing Plaintiff as Class representative, and appointing the undersigned counsel as Class counsel;

B. Declaring that Defendants' actions, as set forth in this Complaint, violated the Driver's Privacy Protection Act, 18 U.S.C. §2721, *et seq.*;

C. Awarding Plaintiff and the other members of the Class and Subclass all available damages including actual damages, statutory damages, penalties, and remedies available as a result of Defendants' violations of the DPPA, but not less than liquidated damages in the amount of $2,500 for each Plaintiff and each member of the Class;

D. Awarding Plaintiff pre- and post-judgment interest;

E. Awarding Plaintiff his costs of suit, including reasonable attorney's fees and expenses;

F. Awarding Plaintiff and the Class and Subclass a permanent injunction to permanently enjoin and restrain Defendants from establishing the same or similar policies or practices as those challenged in this action in the future; and

G. Awarding such further and additional relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: November 1, 2024                    Respectfully submitted,

                                                   RAMON SOTO, individually and on behalf of similarly situated individuals

                        By:    */s/ Eugene Y. Turin*
                               One of Plaintiff's attorneys

                               Eugene Y. Turin
                               William Kingston
                               MCGUIRE LAW, P.C.
                               55 W. Wacker Drive, 9th Fl.
                               Chicago, IL 60601
                               Tel: (312) 893-7002
                               Fax: (312) 275-7895
                               eturin@mcgpc.com
                               wkingston@mcgpc.com